Matthew L. Johnson (6004)
MATTHEW L. JOHNSON & ASSOCIATES, P.C.
Lakes Business Park
8831 W. Sahara Ave.
Las Vegas, NV 89117
Phone: (702) 471-0065
Fax: (702) 471-0075
Email: mjohnson@mjohnsonlaw.com

Attorneys for Debtor
Jean Marc El Jwaidi

E-filed September 10, 2010

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

IN RE

JEAN MARC EL JWAIDI

     Debtor.

)
)
)
)
)
)
)

Case No.: 25181-MKN
Chapter 7

Hearing Date: 09/22/2010
Hearing Time: 10:30 a.m.

OPPOSITION TO MOTION FOR RELIEF FROM AUTOMATIC STAY

  Debtor, Jean Marc El Jwaidi, by and through his attorneys of record, Matthew L. Johnson & Associates, P.C., oppose the Motion for Relief from the Automatic Stay with respect to the Debtor's residence located at 525 S Spruce Canyon, Las Vegas, NV 89144 as there is sufficient equity to adequately protect the home in this instance, and the Debtor plans to continue to make the required monthly payments as outlined in the original loan agreement and all amendments thereto.

  This Opposition is based on 11 U.S.C. §362, the §362 information sheet attached hereto as Exhibit "A", the pleadings and papers on file, the Points and Authorities herein and any arguments of counsel entertained by this Court at the time of hearing on the matter.

  Dated this 10th day of September, 2010.

MATTHEW L. JOHNSON & ASSOCIATES, P.C.

Matthew L. Johnson (6004)
Lakes Business Park
8831 W. Sahara Ave.
Las Vegas, NV 89117

MATTHEW L. JOHNSON & ASSOCIATES, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

POINTS AND AUTHORITIES

I.    FACTS

In approximately 2005, the Debtor and his wife, obtained their residence, 525 S Spruce Canyon, Las Vegas, NV 89144 ("Property"). In order to finance the acquisition of the Property, the Debtor borrowed $2,000,000.00 from secured creditor, Steward Financial, Inc. ("Steward"). The Debtor and Steward executed the relevant documents, including a promissory note and a deed of trust. The deed of trust was duly recorded on or about May 17, 2005. The promissory note provided that the Debtor would make monthly payments to Steward in the amount of $12,291.67 for the first 120 months, after which the payments would increase to $15,959.34 per month for the remainder of the loan term. The Debtor regularly made his monthly payments on the Property. In November, 2008, the Debtor contacted Steward and Steward agreed to provide the Debtor with a 90-day reprieve from making the required mortgage payments. Following the 90-day reprieve, in February 2009, the Debtor again made monthly mortgage payments to Steward. In consideration of the reprieve, the Debtor agreed to allow Steward to increase the Debtor's payments for the remainder of the year to make up the three (3) missed payments. The Debtor made timely mortgage payments in February, March and April 2009. The Debtor was unable to make his monthly payments from May 2009 to September 2010.

In November 2010, the Debtor obtained an appraisal which values his Property at $3,339,711.00. A true and correct copy of the appraisal is attached hereto as Exhibit "B". The secured creditor's claim is, at most, $2,000,000.00, plus penalties and fees.

II.    ARGUMENT

> On a request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
>    (1)    for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> 11 U.S.C. §362(d)(1)

Although there is no specific definition in the Bankruptcy Code for adequate protection, 11 U.S.C. §361 states that adequate protection may be provided by (1) periodic cash payments;

-2-

MATTHEW L. JOHNSON & ASSOCIATES, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

(2) additional or replacement liens, or (3) other relief resulting in the indubitable equivalent of the secured creditor's interest in such property." 11 U.S.C. §361. See also *In re Swedeland Development Group, Inc., Resolution Trust Corporation v. Swedeland Development Group, Inc.,* 16 F.3d 552, 564 (3rd Cir. 1994). A determination of whether there is adequate protection is made on a case by case basis. *In re O'Conner,* 808 F.2d 1393, 1397 (10th Cir 1987).

Further, as this Court is aware, the Court of Appeals for the Ninth Circuit has determined that an equity cushion is sufficient adequate protection even if the Debtor has no equity in the property. *In re Mellor,* 734 F.2d 1396, 1401 (9th Cir 1984) (*citing In re McGowan*, 6 B.R. 241, 243 (B.Ct.E.D.Pa 1980) [holding a 10% cushion is sufficient to have adequate protection] and *In re Rogers Development Corp.,* 2 B.R. 679, 685 (B.Ct.E.D. Virg.1980) [creditor protected by equity cushion of $21,000 despite fact that debtor lacked equity in the property]).

Here, the Debtor has a 2010 appraisal which values the Property at $3,399,711.00. The secured creditors' first security lien on the Property is valued, at most, $2,000,000.00, plus interest and fees. Thus, the secured creditor is adequately protected by a large equity cushion on the Property, and the Motion for Relief from the Automatic Stay must be denied.

Notwithstanding enough adequate protection in the Property to warrant the denial of the instant Motion, the Debtor shall pay adequate protection payments to the secured creditor in the form of its current monthly obligations paid each month over time, until paid in full. The Debtor shall also contact the secured creditor and negotiate the payment schedule of the arrears (from May 2009 through September 2010).

III.    CONCLUSION

Based on the foregoing, the secured creditor's claim is adequately protected. Notwithstanding, the Debtor intends to make its monthly payments to secured creditor as outlined in the original loan agreement. The Debtor also intends to contact the Secured

///

///

- 3 -

1    Creditor and negotiate repayment of the arrears associated with secured creditor's interest.

2    Thus, this Motion must be denied.

3            Dated this _10_ day of September, 2010.

4                            MATTHEW L. JOHNSON & ASSOCIATES, P.C.

5

6

7                            Matthew L. Johnson (6004)
                             Lakes Business Park
8                            8831 W. Sahara Ave.
                             Las Vegas, NV 89117

9                            Attorneys for Debtor

10

11

12                          CERTIFICATE OF SERVICE

13            I hereby certify that on the _10_ day of September, 2010, I sent a true and correct copy of

14    the foregoing OPPOSITION TO MOTION FOR RELIEF FROM AUTOMATIC STAY via

15    electronic service to the following

16            SEE MASTER SERVICE LIST

17

18                            An employee of Matthew L. Johnson & Assoc.,
                             P.C.

19

20

21

22

23

24

25

26

27

28

MATTHEW L. JOHNSON & ASSOCIATES, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

# Exhibit A

## * * § 362 INFORMATION SHEET * *

In re  Jean Marc El Jwaidi          BK-S-09-25181         _____
DEBTOR                             BANKRUPTCY No.        MOTION No.

Steward Financial, Inc.          CHAPTER:   7
MOVANT

PROPERTY INVOLVED IN THIS MOTION:  525 Spruce Canyon, Las Vegas, Nevada 89144

NOTICE SERVED ON:  Debtor(s)   X   ; Debtor's counsel  X   ; Trustee    X    ;

DATE OF SERVICE:_____ September 10, 2010 _____

---

### MOVING PARTY'S CONTENTIONS:

The EXTENT and PRIORITY of LIENS:

1st  Movant - $ _____
2nd_____
3rd _____
4th _____
Other: _____
Total Encumbrances:   $ _____

APPRAISAL of OPINION as to VALUE:
       $Unknown

### DEBTOR'S CONTENTIONS:

---

The EXTENT and PRIORITY of LIENS:

1st _____
2nd _____
3rd _____
4th _____
Other: _____
Total E Month incumbrance: _____

APPRAISAL of OPINION as to VALUE:

---

### TERMS of MOVANT'S CONTRACT
### with the DEBTOR(S)::

Amount of Note:   N/A _____
Interest Rate:    N/A _____
Duration:    N/A _____
Payment per:   $ _____
Date of Default: _____
Amount in Arrears:   $ _____
Date of Notice of Default: _____
SPECIAL CIRCUMSTANCES:
   Space rent is $_____ per month. Debtor has not paid since _____

SUBMITTED BY:

SIGNATURE:_____

### DEBTOR'S OFFER of "ADEQUATE

---

### PROTECTION"for MOVANT:

SPECIAL CIRCUMSTANCES:
   There is substantial equity in the property and the Debtor is willing to make monthly payments.

SUBMITTED BY:  Matthew L. Johnson, Esq.

SIGNATURE: _Matthew L. Johnson_

---

# Exhibit B



# APPRAISAL OF REAL PROPERTY

## LOCATED AT:

525 Spruce Canyon Street
Star Canyon Plat 81 Book Page 29 Lot 14 Block 2
Las Vegas, NV 89144-4343

## FOR:

Housecap Financial, LLC
3198 Temecula Parkway, Suite #A200 Temecula, CA 92592

3,400,000 +

## AS OF:

11/10/2009

## BY:

Loreen L. Stuhr
NV Certified License #A.0005265
**Appraisers of Las Vegas**
800 N. Rainbow Boulevard, Suite #148
Las Vegas, NV 89107

**SUBJECT**

| | |
|---|---|
| Neighborhood Name  Star Canyon | Map Reference  41-F5 Metro Map     Census Tract 0032.23 |

Occupant ⊠ Owner ☐ Tenant ☐ Vacant     Special Assessments $ 9,916.69     ⊠ PUD   HOA $ 589   ☐ per year  ⊠ per month

Property Rights Appraised ⊠ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ⊠ Other (describe) Asset valuation

Lender/Client  Housecap Financial, LLC     Address  3198 Temecula Parkway, Suite #A200 Temecula, CA 92592

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?   ☐ Yes  ⊠ No

Report data source(s) used, offering price(s), and date(s).   County Assessor records and local multiple listing service were used to obtain relevant data.

**CONTRACT**

I ☐ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.  N/A

Contract Price $ N/A     Date of Contract N/A     Is the property seller the owner of public record?  ☐ Yes ☐ No  Data Source(s) Assessor Records

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower?   ☐ Yes  ☐ No

If Yes, report the total dollar amount and describe the items to be paid.   N/A

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location ☐ Urban | ⊠ Suburban | ☐ Rural | Property Values ☐ Increasing | ⊠ Stable | ☐ Declining | PRICE | AGE | One-Unit | 35 % |
| Built-Up ⊠ Over 75% | ☐ 25-75% | ☐ Under 25% | Demand/Supply ☐ Shortage | ☐ In Balance ⊠ Over Supply | | $ (000) | (yrs) | 2-4 Unit | 0 % |
| Growth ☐ Rapid | ⊠ Stable | ☐ Slow | Marketing Time ☐ Under 3 mths | ☐ 3-6 mths ⊠ Over 6 mths | | 120  Low | 0 | Multi-Family | 5 % |
| | | | | | | 5,750  High | 18 | Commercial | 55 % |
| | | | | | | 500  Pred. | 9 | Other | 5 % |

Neighborhood Boundaries  Las Vegas Boulevard to the North; Rampart boulevard to the East;
Charleston boulevard to the South; Town Center Drive to the West.

Neighborhood Description   The neighborhood is primarily comprised of average to excellent quality single family residences, as well as compatible commercial & multi-family uses & vacant land.  Proximity to support services such as schools, shopping, recreational facilities, employment centers, & freeway access is good.  The general appearance of the properties & their appeal to the market is average to very good.

Market Conditions (including support for the above conclusions)   See Supplemental Addendum for market conditions comments.

**SITE**

Dimensions  No survey provided (see plat map)     Area  20,473 Sq.Ft.     Shape  Irregular     View  Nbhd/Mountains/Strip

Specific Zoning Classification P-C     Zoning Description  Planned Community

Zoning Compliance ⊠ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use?   ⊠ Yes  ☐ No  If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | | Public | Private |
|---|---|---|---|---|---|---|---|---|---|
| Electricity | ⊠ | | Water | ⊠ | | Street  Asphalt | | ☐ | ⊠ |
| Gas | ⊠ | | Sanitary Sewer | ⊠ | | Alley  None | | | |

FEMA Special Flood Hazard Area ☐ Yes ⊠ No   FEMA Flood Zone X     FEMA Map # 32003C-2150E     FEMA Map Date 9/27/2002

Are the utilities and off-site improvements typical for the market area?   ⊠ Yes  ☐ No  If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)?   ☐ Yes  ⊠ No  If Yes, describe

**IMPROVEMENTS**

| General Description | | Foundation | | Exterior Description    materials/condition | | Interior    materials/condition | |
|---|---|---|---|---|---|---|---|
| Units ⊠ One ☐ One with Accessory Unit | ⊠ Concrete Slab | ☐ Crawl Space | | Foundation Walls | Concrete/VGood | Floors | Marble/Carpet/VGd |
| # of Stories  2 | ☐ Full Basement | ☐ Partial Basement | | Exterior Walls | Frame/Stuc/VGood | Walls | Drywall/Paint/VGd |
| Type ⊠ Det. ☐ Att. ☐ S-Det./End Unit | Basement Area | None  sq.ft. | | Roof Surface | ConcTile/Very Good | Trim/Finish | Wood/Paint/VGood |
| ⊠ Existing ☐ Proposed ☐ Under Const. | Basement Finish | N/A  % | | Gutters & Downspouts | Overhang/VGood | Bath Floor | Marble/Very Good |
| Design (Style)  Custom/2Story | ☐ Outside Entry/Exit ☐ Sump Pump | | | Window Type | Dual Pane/Low-e/VGd | Bath Wainscot | Marble/Very Good |
| Year Built  2004 | Evidence of ☐ Infestation | | | Storm Sash/Insulated | None/Typical | Car Storage | ☐ None |
| Effective Age (Yrs)  3 | ☐ Dampness ☐ Settlement | | | Screens | Yes/Very Good | ⊠ Driveway | # of Cars  4 |
| Attic ☐ None | Heating ⊠ FWA ☐ HWBB ☐ Radiant | | | Amenities | Woodstove(s) # | Driveway Surface | Concrete |
| ☐ Drop Stair ☐ Stairs | ☐ Other | Fuel  Gas | | ⊠ Fireplace(s) # 4 | ⊠ Fence Block | ⊠ Garage | # of Cars  4 |
| ☐ Floor ⊠ Scuttle | Cooling ⊠ Central Air Conditioning | | | ⊠ Patio/Deck Cv/bal | ⊠ Porch Covered | ☐ Carport | # of Cars |
| ☐ Finished ☐ Heated | ☐ Individual | ☐ Other | | ⊠ Pool & Spa (Ingr) | ☐ Other | ☐ Att. | ☐ Det. ⊠ Built-In |

Appliances ⊠ Refrigerator ⊠ Range/Oven ⊠ Dishwasher ⊠ Disposal ⊠ Microwave ☐P☐ Washer/Dryer ☐ Other (describe)

Finished area above grade contains:   12 Rooms   5 Bedrooms   6.5 Bath(s)   8,577 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.).   The subject has standard efficiency for its age and construction quality.  See Supplemental Addendum for improvements comments.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).   Less than typical physical depreciation noted due to the subject's better than average maintenance characteristics, as well as upgrades and improvements.  At the time of inspection the utilities were on, A/C & heating system were functional and assumed to be of adequate efficiency.  No functional or external inadequacies noted, nor repairs or modernization needed.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?   ☐ Yes ⊠ No  If Yes, describe

These findings are based on observable conditions at time of inspection. The appraiser is not a licensed building contractor or professional building inspector, nor qualified to survey or analyze physical items that are not readily visible. Any concerns should be addressed by an

| | SUBJECT | COMPARABLE SALE #1 | +(-) $ Adjustment | COMPARABLE SALE #2 | +(-) $ Adjustment | COMPARABLE SALE #3 | +(-) $ Adjustment |
|---|---|---|---|---|---|---|---|
| Proximity to Subject | | 3.71 miles SW | | 3.53 miles SW | | 1.49 miles NE | |
| Sale Price | $ N/A | $ 3,150,000 | | $ 3,675,000 | | $ 2,600,000 | |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 427.81 sq.ft. | | $ 450.98 sq.ft. | | $ 273.20 sq.ft. | |
| Data Source(s) | | MLS#915261/APN164-14-311-001 | | MLS#892076/APN164-14-211-020 | | MLS#800250/APN#138-29-212-001 | |
| Verification Source(s) | | Assr Doc #20090914-03973 | | Assr Doc #20090508-03482 | | Assr Doc #20081231-04103 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing Concessions | | Cash/None 167 DOM | | Cash/None 114 DOM | | Cash/None 309 DOM | |
| Date of Sale/Time | | 09/14/09 COE | | 05/08/09 COE | -73,500 | 12/31/08 COE | -52,000 |
| Location | Guard-Gated | Guard-Gated | | Guard-Gated | | Guard-Gated | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 20,473 Sq.Ft. | 25,700 Sq.Ft. | -26,000 | 30,056 Sq.Ft. | -48,000 | 36,396 Sq.Ft. | -80,000 |
| View | Nbhd/Mnts/Strip | Superior (Golf) | -200,000 | Similar | | Superior (Golf) | -200,000 |
| Design (Style) | Custom/2Story | Custom/2Story | | Custom/2Story | | Custom/2Story | |
| Quality of Construction | Excellent | Excellent | | Excellent | | Excellent | |
| Actual Age | 5 years | 1 year | | 6 years | | 11 years | +60,000 |
| Condition | Very Good | Similar | | Similar | | Inferior ("Fair") | +100,000 |
| Above Grade | Total / Bdrms. / Baths | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | |
| Room Count | 12 / 5 / 6.5 | 13 / 5 / 6.5 | | 11 / 5 / 5.5 | +20,000 | 11 / 4 / 5 | +30,000 |
| Gross Living Area | 8,577 sq.ft. | 7,363 sq.ft. | +121,400 | 8,149 sq.ft. | +42,800 | 9,517 sq.ft. | -94,000 |
| Basement & Finished | None | None | | None | | None | |
| Rooms Below Grade | N/A | N/A | | N/A | | N/A | |
| Functional Utility | Good | Good | | Good | | Good | |
| Heating/Cooling | FAU/Yes | FAU/Yes | | FAU/Yes | | FAU/Yes | |
| Energy Efficient Items | Typical | Typical | | Typical | | Typical | |
| Garage/Carport | 4/Built-In | 4/Built-In | | 4/Built-In | | 3/Built-In | +10,000 |
| Porch/Patio/Deck | CvdPats/Balcs | Similar | | Similar | | Similar | |
| Fireplace | 4 Fireplaces | 5 Fireplaces | -2,500 | 2 Fireplaces | +5,000 | 3 Fireplaces | +2,500 |
| Landscaping/Upgrades | Full/VeryGood | Full/Good | | Full/Similar | | Full/Inferior | +150,000 |
| Fence/Pool/Spa | Block/Pool-Spa | Block/Pool-Spa | | Block/Pool-Spa | | Block/Pool-Spa | |
| Net Adjustment (Total) | | ☐ + ☒ - $ | -107,100 | ☐ + ☒ - $ | -53,700 | ☐ + ☒ - $ | -73,500 |
| Adjusted Sale Price of Comparables | | Net Adj. 3.4% Gross Adj. 11.1% $ | 3,042,900 | Net Adj. 1.5% Gross Adj. 5.2% $ | 3,621,300 | Net Adj. 2.8% Gross Adj. 29.9% $ | 2,526,500 |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☒ did ☐ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)   Local Multiple Listing Service/County Assessor Records
My research ☒ did ☐ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)   Local Multiple Listing Service/County Assessor Records
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 02/13/2007 | No prior sales within | No prior sales within | 12/31/08 - $2,600,000 (Sale) |
| Price of Prior Sale/Transfer | $3,150,000 | the last three years. | the last three years. | 02/12/08 - $3,450,000 (Sale) |
| Data Source(s) | MLS/Assessor Records | MLS/Assessor Records | MLS/Assessor Records | MLS/Assessor Records |
| Effective Date of Data Source(s) | 11/10/2009 | 11/10/2009 | 11/10/2009 | 11/10/2009 |

Analysis of prior sale or transfer history of the subject property and comparable sales   Per Assessor records, the subject had a quitclaim deed transfer
recorded on 03/29/2007 and a prior sale transfer recorded on 02/13/2007 for $3,150,000. The sales history of the subject and the
comparables selected was reviewed and appears to be typical for the Las Vegas market area.

Summary of Sales Comparison Approach   The Sales Comparison Approach involves the gathering of data pertinent to the sale of properties similar to
the subject as of the date of valuation. The data is analyzed with consideration given to the significant differences between these
properties. This approach is based upon the principle of substitution, which implies that a property value tends to be set at the cost of
acquiring an equally desirable substitute property, assuming that no costly delay is encountered in making the substitution. After a thorough
search of the general neighborhood, all comparables utilized were considered to be among the most similar recent sales available for
comparison to the subject property. These sales were deemed to provide a reliable indication of value for the subject property. See Additional
Comments Section for Sales Comparison comments.

Indicated Value by Sales Comparison Approach $  3,400,000
Indicated Value by: Sales Comparison Approach $  3,400,000   Cost Approach (if developed) $  3,399,711   Income Approach (if developed) $  N/A
Most weight is given to the sales comparison approach as it best reflects the actions of buyers and sellers in the market. The cost approach
was analyzed and supports the market data. The income approach was not developed due to limited rental data, and as the subject is a single
family residence in a primarily owner-occupied neighborhood.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been
completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the
following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair. This appraisal is not valid without

Listing Service, the subject homeowner, agent, lender, etc. I believe this report to be complete and accurate, however, should any error or omission be subsequently discovered, I reserve the right to correct it.

I am not a home or environmental inspector. This report should not be relied upon to disclose any conditions present in the subject property. The appraisal report does not guarantee that the property is free of defects or environmental problems. The appraiser performs an observation of visible and accessible areas only. Mold may be present in areas the appraiser cannot see. If further assurance is required, there would need to be a professional inspection by a qualified building and/or environmental inspector.

Nothing set forth in the appraisal should be relied upon for the purpose of determining the amount or type of insurance coverage to be placed on the subject property. The appraiser assumes no liability for and does not guarantee that any insurable value estimate inferred from this report will result in the subject property being fully insured for any loss that may be sustained. The appraiser recommends that an insurance professional be consulted.

**ADDITIONAL COMMENTS**

## COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)   Development of the cost approach has been attempted by the appraiser as an analysis to support the opinion of value. Because there is insufficient market evidence to credibly support the site value/derivation of the cost approach is not given any consideration in the appraiser's final analysis. Use of this data in whole or in part for other purposes, such as insurable value, is not intended by the appraiser. No liability is assumed.

| | | | | | |
|---|---|---|---|---|---|
| ESTIMATED ☒ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | | =$ | 750,000 |
| Source of cost data  Marshall and Swift Cost Handbook | DWELLING | 8,577 Sq.Ft. @ $ | 231.45 | =$ | 1,985,147 |
| Quality rating from cost service  Excellent  Effective date of cost data  12/2008 | | None Sq.Ft. @ $ | | =$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | Upgrades/Improvements | | | =$ | 500,000 |
| Cost computations from three sources:  Marshall/Swift Cost Handbook, | Garage/Carport | 1,257 Sq.Ft. @ $ | 32.51 | =$ | 40,865 |
| Local Builders Cost Quotes, Appraisers Cost Files, accrued depreciation | Total Estimate of Cost-New | | | =$ | 2,526,012 |
| is based on the age/life method. The cost approach may not be a | Less   Physical | Functional | External | | |
| reliable indication of replacement/reproduction cost for any date other | Depreciation    126,301 | | | =$( | 126,301) |
| than the effective date of this appraisal, due to changing costs of labor | Depreciated Cost of Improvements | | | =$ | 2,399,711 |
| and materials, changing building codes and government regulation/ | "As-is" Value of Site Improvements | | | =$ | 250,000 |
| requirements. | (Includes pool and spa) | | | | |
| Estimated Remaining Economic Life (HUD and VA only) | 57 Years | INDICATED VALUE BY COST APPROACH | | =$ | 3,399,711 |

## INCOME APPROACH TO VALUE (not required by Fannie Mae)

| | | | | | |
|---|---|---|---|---|---|
| Estimated Monthly Market Rent $ | N/A | X Gross Rent Multiplier | N/A  = $ | N/A | Indicated Value by Income Approach |
| Summary of Income Approach (including support for market rent and GRM) | N/A | | | | |

## PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)?  ☐ Yes  ☒ No     Unit type(s)  ☒ Detached  ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project  N/A

| | | | | | |
|---|---|---|---|---|---|
| Total number of phases | N/A | Total number of units | N/A | Total number of units sold | N/A |
| Total number of units rented | N/A | Total number of units for sale | N/A | Data source(s)  N/A | |

Was the project created by the conversion of existing building(s) into a PUD?  ☐ Yes  ☐ No  If Yes, date of conversion.  N/A

Does the project contain any multi-dwelling units?  ☐ Yes  ☐ No  Data Source  N/A

Are the units, common elements, and recreation facilities complete?  ☐ Yes  ☐ No  If No, describe the status of completion.  N/A

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION: The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature _Loreen L. Stuhr_ | Signature _____ |
| Name  Loreen L. Stuhr | Name _____ |
| Company Name  Appraisers of Las Vegas | Company Name _____ |
| Company Address  800 N. Rainbow Blvd, #148, Las Vegas, NV 89107 | Company Address _____ |
| Telephone Number  (702) 253-9872 | Telephone Number _____ |
| Email Address  Loreen@AppraisersofLasVegas.com | Email Address _____ |
| Date of Signature and Report  11/16/2009 | Date of Signature _____ |
| Effective Date of Appraisal  11/10/2009 | State Certification # _____ |
| State Certification #  A.0005265-CR | or State License # _____ |
| or State License # | State _____ |
| or Other (describe) _____ State # _____ | Expiration Date of Certification or License _____ |
| State  NV | |
| Expiration Date of Certification or License  03/31/2010 | SUBJECT PROPERTY |

ADDRESS OF PROPERTY APPRAISED
525 Spruce Canyon Street
Las Vegas, NV 89144-4343
APPRAISED VALUE OF SUBJECT PROPERTY $   3,400,000
LENDER/CLIENT
Name  N/A
Company Name  Housecap Financial, LLC
Company Address  3198 Temecula Parkway, Suite #A200

SUBJECT PROPERTY

☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
   Date of Inspection _____
☐ Did inspect interior and exterior of subject property
   Date of Inspection _____

COMPARABLE SALES

☐ Did not inspect exterior of comparable sales from street

| Sale Price/Gross Liv. Area | $ sq.ft.|$ 278.86 sq.ft. | | $ 693.64 sq.ft. | | $ 452.01 sq.ft. | |
|---|---|---|---|---|---|---|---|
| Data Source(s) | | MLS#833172/APN#138-30-713-006 | | MLS#874287/APN#164-14-413-050 | | MLS#907943/APN#164-14-413-048 | |
| Verification Source(s) | | Assr Doc #20090608-06595 | | Assr Doc #20090501-03807 | | Contingent Sale/Listing Agent | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing Concessions | | Conv/None 344 DOM | | Cash/None 22 DOM | | Conv/None 270 DOM | |
| Date of Sale/Time | | 06/08/09 COE | -40,000 | 05/01/09 COE | -108,000 | Listed 02/10/09 | |
| Location | Guard-Gated | Guard-Gated | | Guard-Gated | | Guard-Gated | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 20,473 Sq.Ft. | 15,171 Sq.Ft. | +27,000 | 20,909 Sq.Ft. | | 25,265 Sq.Ft. | -24,000 |
| View | Nbhd/Mnts/Strip | Superior (Golf) | -200,000 | Superior (Golf) | -200,000 | Superior (Golf) | -200,000 |
| Design (Style) | Custom/2Story | Custom/2Story | | Custom/2Story | | Custom/2Story | |
| Quality of Construction | Excellent | Excellent | | Excellent | | Excellent | |
| Actual Age | 5 years | 8 years | | 2 years | | 2 years | |
| Condition | Very Good | Similar | | Similar | | Similar | |
| Above Grade — Room Count (Total/Bdrms/Baths) | 12 / 5 / 6.5 | 10 / 6 / 6.5 | | 11 / 5 / 5.5 | +20,000 | 13 / 5 / 6 | +10,000 |
| Gross Living Area | 8,577 sq.ft. | 7,172 sq.ft. | +140,500 | 7,785 sq.ft. | +79,200 | 7,741 sq.ft. | +83,600 |
| Basement & Finished | None | None | | None | | None | |
| Rooms Below Grade | N/A | N/A | | N/A | | N/A | |
| Functional Utility | Good | Good | | Good | | Good | |
| Heating/Cooling | FAU/Yes | FAU/Yes | | FAU/Yes | | FAU/Yes | |
| Energy Efficient Items | Typical | Typical | | Typical | | Typical | |
| Garage/Carport | 4/Built-In | 4/Built-In | | 4/Built-In | | 4/Built-In | |
| Porch/Patio/Deck | CvdPats/Balcs | Similar | | Similar | | Similar | |
| Fireplace | 4 Fireplaces | 2 Fireplaces | +5,000 | 3 Fireplaces | +2,500 | 2 Fireplaces | +5,000 |
| Landscaping/Upgrades | Full/VeryGood | Full/Inferior | +150,000 | Full/Similar | | Full/Inferior | +150,000 |
| Fence/Pool/Spa | Block/Pool-Spa | Block/Pool-Spa | | Block/Pool-Spa | | Block | |
| Net Adjustment (Total) | | ☒ + ☐ - | $ 82,500 | ☐ + ☒ - | $ -206,300 | ☒ + ☐ - | $ 24,600 |
| Adjusted Sale Price of Comparables | | Net Adj. 4.1 % Gross Adj. 28.1 % | $ 2,082,500 | Net Adj. 3.8 % Gross Adj. 7.6 % | $ 5,193,700 | Net Adj. 0.7 % Gross Adj. 13.5 % | $ 3,523,600 |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 02/13/2007 | No prior sales within | No prior sales within | No prior sales within |
| Price of Prior Sale/Transfer | $3,150,000 | the last three years. | the last three years. | the last three years. |
| Data Source(s) | MLS/Assessor Records | MLS/Assessor Records | MLS/Assessor Records | MLS/Assessor Records |
| Effective Date of Data Source(s) | 11/10/2009 | 11/10/2009 | 11/10/2009 | 11/10/2009 |

Analysis of prior sale or transfer history of the subject property and comparable sales    Per Assessor records, the subject had a quitclaim deed transfer recorded on 03/29/2007 and a prior sale transfer recorded on 02/13/2007 for $3,150,000. The sales history of the subject and the comparables selected was reviewed and appears to be typical for the Las Vegas market area.

Analysis/Comments    Site size differences greater than 1,000 square feet are correlated at $5 per square foot and rounded to the nearest $500.00 increment. Living area differences greater than 100 sq.ft. are correlated at $100.00 and rounded to the nearest $10.00 increment. Adjustments for patios, landscaping and upgrades were made based on paired sales analysis, as well as data acquired from Marshall & Swift's 2009 Home Repair & Remodel Cost Guide (section "A" for "Excellent" quality homes).

| VALUE ADJUSTMENTS | SUBJECT | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
|---|---|---|---|---|---|---|---|
| Sale Price/Gross Liv. Area | $          sq.ft. | $     344.49 sq.ft. | | $    474.92 sq.ft. | | $      sq.ft. | |
| Data Source(s) | | MLS#956961/APN#137-36-615-022 | | MLS#902302/APN#137-36-615-064 | | | |
| Verification Source(s) | | Current Listing/Listing Agent | | Current Listing/Listing Agent | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | -1% slr discount | -29,000 | -1% slr discount | -43,000 | | |
| Concessions | | All finance avail. | | All finance avail. | | | |
| Date of Sale/Time | | Listed 07/24/09 | | Listed 01/23/09 | | | |
| Location | Guard-Gated | Guard-Gated | | Guard-Gated | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | | |
| Site | 20,473 Sq.Ft. | 17,860 Sq.Ft. | +13,000 | 41,428 Sq.Ft. | -105,000 | | |
| View | Nbhd/Mnts/Strip | Superior (Golf) | -200,000 | Superior (Golf) | -200,000 | | |
| Design (Style) | Custom/2Story | Custom/2Story | | Custom/2Story | | | |
| Quality of Construction | Excellent | Excellent | | Excellent | | | |
| Actual Age | 5 years | 4 years | | 9 years | +40,000 | | |
| Condition | Very Good | Similar | | Similar | | | |
| Above Grade | Total / Bdrms. / Baths | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | |
| Room Count | 12 / 5 / 6.5 | 11 / 5 / 4.5 | +40,000 | 14 / 5 / 6 | +10,000 | | |
| Gross Living Area | 8,577 sq.ft. | 8,418 sq.ft. | +15,900 | 9,054 sq.ft. | -47,700 | sq.ft. | |
| Basement & Finished | None | None | | None | | | |
| Rooms Below Grade | N/A | N/A | | N/A | | | |
| Functional Utility | Good | Good | | Good | | | |
| Heating/Cooling | FAU/Yes | FAU/Yes | | FAU/Yes | | | |
| Energy Efficient Items | Typical | Typical | | Typical | | | |
| Garage/Carport | 4/Built-In | 4/Built-In | | 4/Built-In | | | |
| Porch/Patio/Deck | CvdPats/Balcs | Similar | | Similar | | | |
| Fireplace | 4 Fireplaces | 3 Fireplaces | | 5 Fireplaces | -2,500 | | |
| Landscaping/Upgrades | Full/VeryGood | Full/Similar | | Full/Similar | | | |
| Fence/Pool/Spa | Block/Pool-Spa | Block/Pool-Spa | | Block/Pool-Spa | | | |
| Net Adjustment (Total) | | ☐ + ☒ - | $   -160,100 | ☐ + ☒ - | $   -348,200 | ☐ + ☐ - | $ |
| Adjusted Sale Price | | Net Adj.  5.5 % | | Net Adj.  8.1 % | | Net Adj.  % | |
| of Comparables | | Gross Adj.  10.3 % | $  2,739,800 | Gross Adj.  10.4 % | $  3,951,700 | Gross Adj.  % | $ |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #7 | COMPARABLE SALE #8 | COMPARABLE SALE #9 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 02/13/2007 | 04/27/2009 | No prior sales within | |
| Price of Prior Sale/Transfer | $3,150,000 | $3,300,000 (Sale) | the last three years. | |
| Data Source(s) | MLS/Assessor Records | MLS/Assessor Records | MLS/Assessor Records | |
| Effective Date of Data Source(s) | 11/10/2009 | 11/10/2009 | 11/10/2009 | |

Analysis of prior sale or transfer history of the subject property and comparable sales    Per Assessor records, the subject had a quitclaim deed transfer
recorded on 03/29/2007 and a prior sale transfer recorded on 02/13/2007 for $3,150,000.  The sales history of the subject and the
comparables selected was reviewed and appears to be typical for the Las Vegas market area.

Analysis/Comments    Site size differences greater than 1,000 square feet are correlated at $5 per square foot and rounded to the nearest $500.00
Increment.  Living area differences greater than 100 sq.ft. are correlated at $100.00 and rounded to the nearest $10.00 increment.
Adjustments for patios, landscaping and upgrades were made based on paired sales analysis, as well as data acquired from Marshall & Swift's
2009 Home Repair & Remodel Cost Guide (section "A" for "Excellent" quality homes).

**MARKET CONDITIONS COMMENTS:** Nationally home prices are in decline. The Las Vegas real estate market has experienced a leveling of activity in the past few months. There is downward pressure on real estate values, partly due to the effects of short sales, foreclosures, bank-owned property sales and builders' inventory of unsold properties. While it is estimated that properties in default represent mostly investor-owned properties, it is definitely having an impact on the rest of the market. Analysts expect this to be resolved once the resetting of the interest rates on adjustable rate mortgage loans find resolution through refinancing, foreclosure, resale, or re-negotiation of loan terms with lenders.

Analysts predict that most buyers who purchased property as primary residences are not inclined to sell at a loss and will continue to live in these properties until the market strengthens. Though the supply and cost of capital may remain favorable, it is apparent that underwriting for real estate debt is tightening up, making mortgage financing more difficult than in the past. The Las Vegas Hotel and Gaming Sector appears strong with investments in new building and renovation projects at the "Las Vegas Strip" creating jobs and opportunities for the local economy.

**HOUSING TRENDS:** Market data in the subject's market segment indicate a declining trend of home prices. This opinion was based on national, regional, and community data supplied by the Greater Las Vegas Association of Realtors (GLVAR), the local Association of Realtors, NAR and OFHEO.

Data Case Example: The November 2009 issue of Southern Nevada Realtor Magazine, the official publication of the GLVAR, reports that the average price of a 4+/bedroom home decreased from $291,139 in September 2008 to $167,911 in September of 2009. Listings are staying on the market longer, the number of homes being offered for sale has increased, builder incentives are on the rise in new tract sales, and sellers are expected to assist in buyers' financing costs.

The difference in date of sale is significant in a declining market. Therefore, a minus time adjustment has been made to reflect the decline in the market between the date of the comparable sale and the date of this analysis. A 2% minus adjustment was made to any comparable greater than 90 days old. This was based on the S & P/Case Shiller Home Price Index for the Las Vegas metropolitan area. The rate of adjustment was based on changes in the home price index for the 12-month time period of April 2008 (HPI-165.71) and April 2009 (HPI-112.39).

**SUMMERLIN HOA/SID COMMENTS:** The subject is located in "Bellacere" a guard-gated, golf course subdivision located within the 250,000 acre master planned community of Summerlin. Summerlin is located in the northwestern sector of the Las Vegas market area. Summerlin is primarily comprised of average to good quality single family residences. Also located in the area are good to excellent quality custom homes on large, golf, or mountain view sites, compatible condominium and commercial uses and vacant land. Schools, libraries, and religious facilities are located within Summerlin as are smaller shopping facilities. Larger shopping centers are nearby. Access to the freeway is good. summerlin has many recreational features including parks, pools, tennis courts, walking paths, and basketball courts.

The subject's monthly Summerlin HOA fee is $40.00 and includes access to the above amenities and maintenance of greenbelt areas. In addition, there is a special improvement district tax with owners paying approximately $961.88 semiannually through approximately the year 2016, which pays for the development of the Summerlin infrastructure. There is an additional $549.00 monthly fee in the subject's subdivision which provides for the maintenance of the subject subdivision's guard-gate, any community amenities, as well as grounds maintenance within the subdivision.

**IMPROVEMENTS/UPGRADES COMMENTS:** The subject property is a highly upgraded custom 2-story home that has recently been featured in three national architectural magazines (USA - Fine Homes International, also magazines in Israel and Dubai). The grounds are covered with mature, lush front and rear landscaping. The front entrance has solid marble columns with marble water feature and Mexican entry doors; exterior windows have custom framed imported pop-outs; extensive use of marble flooring throughout with solid marble columns at interior; wood carved beams at ceiling; retractable chandelier; central vacuum system; imported fossil walls; custom cabinetry throughout; marble countertops and vanities; Viking appliances to include built-in refrigerator; butler's pantry; 15 foot granite bar at family room; wetbar at loft; custom marble fireplaces throughout; extensive built-ins at library; theatre with surround sound; electronic shades at family room; extensive use of built-ins at closets; marble master bath surrounds with spa tub,

**SALES COMPARISON COMMENTS:** As no similar, recent sales were available within the subject's subdivision, comparables #1, #2, #3, #4 and #5 are from competing guard-gated, golf course subdivisions within the master plan community of Summerlin. Comparable #6 is a contingent sale from a competing subdivision and comparables #7 and #8 are current listings from within the subject's immediate subdivision. It is sometimes necessary to go beyond normal parameters in appraising highly upgrades custom homes. Therefore, line item adjustments for one or more of the comparables, as well as net/gross adjustments for one or more of the comparables may exceed typical guidelines. Adjustments were made as follows:

Comparable #1: Superior in site size, golf course view and fireplace count. Inferior in gross living area.

Comparable #2: Superior in site size. Inferior in bath count, gross living area and fireplace count.

Comparable #3: Superior in site size, golf course view and gross living area. Inferior in age, overall condition, bath count, garage count, fireplace count and upgrades.

Comparable #4: Superior in golf course view. Inferior in site size, gross living area, fireplace count and upgrades.

Comparable #5: Superior in golf course view. Inferior in bath count, gross living area and fireplace count.

Comparable #6: Superior in site size and golf course view. Inferior in bath count, gross living area, fireplace count and upgrades.

Comparable #7: A downward adjustment was made for typical seller discounting at the time of sale. Superior in golf course view. Inferior in site size, bath count and gross living area.

Comparable #8: Superior in site size, golf course view, gross living area and fireplace count. Inferior in age and bath count.

**FINAL RECONCILIATION:** The sales comparison approach is the primary indicator of value as it best reflects the actions of buyers and sellers in the marketplace. Therefore, the value indicated by this approach is given the most weight. The cost approach is given secondary consideration as its reliability is weakened by estimates for construction costs, physical depreciation, and site value. The income approach was considered but was not used as this is a single family residence in a predominantly owner-occupied market.

All comparables were of the same design, condition, and quality. All closed sales sold within the last months, and considered together were good indicators of the subject's value, therefore, all were given equal weight in determining an opinion of value on the subject. With an adjusted value range indicated between $2,122,500 and $5,301,700, an opinion of value which trends toward $3,400,000 appears most supportable.

It is available and reliable and must provide analysis as indicated below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. It is recognized that not all data sources will be able to provide data for the shaded areas below; if it is available, however, the appraiser must include the data in the analysis. If data sources provide the required information as an average instead of the median, the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

| Inventory Analysis | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 2 | 1 | 1 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | 0.33 | 0.33 | 0.33 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Total # of Comparable Active Listings | 23 | 30 | 46 | ☐ Declining | ☐ Stable | ☒ Increasing |
| Months of Housing Supply (Total Listings/Ab.Rate) | 69.7 | 90.9 | 139.4 | ☐ Declining | ☐ Stable | ☒ Increasing |
| Median Sale & List Price, DOM, Sale/List % | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
| Median Comparable Sale Price | 4,537,500 | 2,000,000 | 3,150,000 | ☒ Increasing | ☐ Stable | ☐ Declining |
| Median Comparable Sales Days on Market | 68 | 344 | 167 | ☐ Declining | ☒ Stable | ☐ Increasing |
| Median Comparable List Price | 3,950,000 | 3,578,750 | 3,678,750 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Median Comparable Listings Days on Market | 102 | 172.5 | 113 | ☐ Declining | ☒ Stable | ☐ Increasing |
| Median Sale Price as % of List Price | 85.17 | 80.16 | 86.12 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Seller-(developer, builder, etc.)paid financial assistance prevalent? ☐ Yes ☒ No | | | | ☐ Declining | ☒ Stable | ☐ Increasing |

Explain in detail the seller concessions trends for the past 12 months (e.g., seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs, condo fees, options, etc.).    Local MLS reports 4 closed sales of comparable properties within the past 12 months.  None of these properties sold with seller's concessions, i.e., seller's contributions to the buyer's closing costs.  Government (FHA & VA) and conventional financing are typical for the area.  Not much is seen in the way of seller concessions for luxury homes.

Are foreclosure sales (REO sales) a factor in the market? ☒ Yes ☐ No    If yes, explain (including the trends in listings and sales of foreclosed properties).
There is downward pressure on real estate values, partly due to the effects of the short sales, foreclosures, and bank-owned property sales. Little "stigma" is present for REO properties in average-good condition, and many have sale prices over list prices due to multiple offers. There are, however, a number of REO properties in fair-poor condition due to the lack of regular maintenance and/or damage caused by prior homeowner's or tenants. These properties are exhibiting a longer than normal marketing time, as well as lower sale prices.
Cite data sources for above information.    MLXchange, Standard & Poor's Case-Schiller Home Price Index, National Association of Realtors, Clark County Public Records.

Summarize the above information as support for your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales and/or expired and withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions.
The overall trend on the inventory analysis points toward a declining supply.  The number of properties listed on the market would likely be higher if sellers were not reluctant to list their properties in a market that competes with short sales, auctions, and bank-owned properties.

| If the subject is a unit in a condominium or cooperative project , complete the following: | | | Project Name: | | | |
|---|---|---|---|---|---|---|
| Subject Project Data | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
| Total # of Comparable Sales (Settled) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Total # of Active Comparable Listings | | | | ☐ Declining | ☐ Stable | ☐ Increasing |
| Months of Unit Supply (Total Listings/Ab.Rate) | | | | ☐ Declining | ☐ Stable | ☐ Increasing |

Are foreclosure sales (REO sales) a factor in the project? ☐ Yes ☐ No    If yes, indicate the number of REO listings and explain the trends in listings and sales of foreclosed properties.

Summarize the above trends and address the impact on the subject unit and project.

Signature _Loreen L. Stuhr_          Signature
Appraiser Name    Loreen L. Stuhr          Supervisory Appraiser Name

# SKETCH/AREA TABLE ADDENDUM

File No   137-36-615-049-01

Property Address   925 SPRUCE CANYON ST
City   05-2004                                          State                    Zip
Owner   STAR CANYON - BELLACERE
Client   CUSTOM
Appraiser Name   127 FROM PLANS



Comments:  This is for Tax Assessment Purposes only.For specific information please go to our website at
www.co.clark.nv.us/assessor/assessor.htm

## AREA CALCULATIONS SUMMARY

| Code | Description | Factor | Net Size | Perimeter | Net Totals |
|------|-------------|--------|----------|-----------|------------|
| GLA1 | F1 | 1.00 | 5154.6 | 302.3 | 5154.6 |
| GLA2 | F2 | 1.00 | 3421.9 | 433.1 | 3421.9 |

**COMMENTS**

**FIXTURES**

| Net LIVABLE Area | (Rounded w/ Factors) | 8576 |



### Subject Front

| | |
|---|---|
| 525 Spruce Canyon Street | |
| Sales Price | N/A |
| Gross Living Area | 8,577 |
| Total Rooms | 12 |
| Total Bedrooms | 5 |
| Total Bathrooms | 6.5 |
| Location | Guard-Gated |
| View | Nbhd/Mnts/Strip |
| Site | 20,473 Sq.Ft. |
| Quality | Excellent |
| Age | 5 years |



### Subject Rear



### Subject Street



**Address verification**



**Front entry**



**Staircase**



**Dining Room**







**Elevator**



**Bath**



**Bath**



**Bath**








**Master Bath**                                    **Master Retreat**




**Bedroom**                                        **Bedroom**






**Laundry**



**Laundry**



**Kitchen**



**Kitchen**







**Theatre**



**Wetbar**



**Garage – interior**



**Garage – exterior**







**Pool**



**Spa**



**Patios**



**Outdoor Shower**



### Comparable 1

57 Painted Feather Way

| | |
|---|---|
| Prox. to Subject | 3.71 miles SW |
| Sales Price | 3,150,000 |
| Gross Living Area | 7,363 |
| Total Rooms | 13 |
| Total Bedrooms | 5 |
| Total Bathrooms | 6.5 |
| Location | Guard-Gated |
| View | Superior (Golf) |
| Site | 25,700 Sq.Ft. |
| Quality | Excellent |
| Age | 1 year |



### Comparable 2

12 Golden Sunray Lane

| | |
|---|---|
| Prox. to Subject | 3.53 miles SW |
| Sales Price | 3,675,000 |
| Gross Living Area | 8,149 |
| Total Rooms | 11 |
| Total Bedrooms | 5 |
| Total Bathrooms | 5.5 |
| Location | Guard-Gated |
| View | Similar |
| Site | 30,056 Sq.Ft. |
| Quality | Excellent |
| Age | 6 years |



### Comparable 3

9032 Players Club Drive

| | |
|---|---|
| Prox. to Subject | 1.49 miles NE |
| Sales Price | 2,600,000 |
| Gross Living Area | 9,517 |
| Total Rooms | 11 |
| Total Bedrooms | 4 |
| Total Bathrooms | 5 |
| Location | Guard-Gated |
| View | Superior (Golf) |
| Site | 36,396 Sq.Ft. |
| Quality | Excellent |
| Age | 11 years |



### Comparable 4

9424 Tournament Canyon Drive

| | |
|---|---|
| Prox. to Subject | 1.01 miles NE |
| Sales Price | 2,000,000 |
| Gross Living Area | 7,172 |
| Total Rooms | 10 |
| Total Bedrooms | 6 |
| Total Bathrooms | 6.5 |
| Location | Guard-Gated |
| View | Superior (Golf) |
| Site | 15,171 Sq.Ft. |
| Quality | Excellent |
| Age | 8 years |



### Comparable 5

27 Skybird Court

| | |
|---|---|
| Prox. to Subject | 3.98 miles SW |
| Sales Price | 5,400,000 |
| Gross Living Area | 7,785 |
| Total Rooms | 11 |
| Total Bedrooms | 5 |
| Total Bathrooms | 5.5 |
| Location | Guard-Gated |
| View | Superior (Golf) |
| Site | 20,909 Sq.Ft. |
| Quality | Excellent |
| Age | 2 years |



### Comparable 6

35 Skybird Court

| | |
|---|---|
| Prox. to Subject | 4.00 miles SW |
| Sales Price | 3,499,000 |
| Gross Living Area | 7,741 |
| Total Rooms | 13 |
| Total Bedrooms | 5 |
| Total Bathrooms | 6 |
| Location | Guard-Gated |
| View | Superior (Golf) |
| Site | 25,265 Sq.Ft. |
| Quality | Excellent |
| Age | 2 years |



### Comparable 7

10208 Summit Canyon Drive

| | |
|---|---|
| Prox. to Subject | 0.19 miles W |
| Sales Price | 2,899,900 |
| Gross Living Area | 8,418 |
| Total Rooms | 11 |
| Total Bedrooms | 5 |
| Total Bathrooms | 4.5 |
| Location | Guard-Gated |
| View | Superior (Golf) |
| Site | 17,860 Sq.Ft. |
| Quality | Excellent |
| Age | 4 years |



### Comparable 8

10432 Summit Canyon Drive

| | |
|---|---|
| Prox. to Subject | 0.46 miles W |
| Sales Price | 4,299,900 |
| Gross Living Area | 9,054 |
| Total Rooms | 14 |
| Total Bedrooms | 5 |
| Total Bathrooms | 6 |
| Location | Guard-Gated |
| View | Superior (Golf) |
| Site | 41,428 Sq.Ft. |
| Quality | Excellent |
| Age | 9 years |

### Comparable 9

| |
|---|
| Prox. to Subject |
| Sales Price |
| Gross Living Area |
| Total Rooms |
| Total Bedrooms |
| Total Bathrooms |
| Location |
| View |
| Site |
| Quality |
| Age |







Subject
525 Spruce Canyon Street





# APPRAISER CERTIFICATE

## STATE OF NEVADA DEPARTMENT OF BUSINESS AND INDUSTRY

NOT TRANSFERABLE                    REAL ESTATE DIVISION                    NOT TRANSFERABLE

This is to Certify That : LOREEN L STUHR                    Certificate Number: A.0005265-CR

Is duly authorized to act as a CERTIFIED RESIDENTIAL APPRAISER from the issue date to the expiration date at the business address stated here in, unless the certificate is sooner revoked, cancelled, withdrawn, or invalidated.

Issue Date: March 21, 2008                    Expire Date: March 31, 2010

In witness whereof, THE DEPARTMENT OF BUSINESS AND INDUSTRY, REAL ESTATE DIVISION, by virtue of the authority vested in it by Chapter 645C of the Nevada Revised Statues, has caused this Certificate to be issued with its Seal printed thereon. This certificate must be conspicuously displayed in place of business.

FOR: APPRAISERS OF LAS VEGAS .COM                    REAL ESTATE DIVISION
        800 N RAINBOW BLVD #156
        LAS VEGAS, NV  89107

ANN M McDERMOTT
Administrator

 GENERAL STAR NATIONAL INSURANCE COMPANY
P.O. Box 10354
Stamford, Connecticut  06904

## REAL ESTATE APPRAISERS ERRORS & OMISSIONS LIABILITY INSURANCE POLICY

### DECLARATIONS PAGE

This is a claims made and reported policy.
Please read this policy and all endorsements and attachments carefully.

Policy Number:   NJA982250D          Renewal of Number:   NJA982250C

1. NAMED INSURED:        Loreen Stuhr
   MAILING ADDRESS:      6437 Hartman St
                         Las Vegas, NV 89108

2. POLICY PERIOD: Inception Date: 03/30/2008          Expiration Date: 03/30/2009
   Effective 12:01 a.m. Standard Time at the mailing address of the Named Insured.

3. LIMIT OF LIABILITY:
   Each Claim:            $ 1,000,000
   Aggregate:            $ 2,000,000
   Lock Box Liability:    N/A

4. CLAIM EXPENSES:
   b. Have a separate limit of liability.

5. STATUS OF INSURED:     Independent Contractor

6. DEDUCTIBLE:
   Each Claim:            $500/1,000
   b. The deductible amount specified above applies to both Damages and Claims Expenses.

7. PRIOR ACTS DATE:     03/30/2004
   If a date is indicated, this insurance will not apply to any regular act, error, omission or personal injury
   which occurred before such date.

8. PREMIUM:             $  590.00

9. ENDORSEMENTS:
   This policy is made and accepted such to the printed conditions in this policy together with the provisions,
   stipulations and agreements contained in the following form(s) or endorsement(s).
   GSN-06-RE-122 (07/2004) GSN-06-PL-829NV (07/2003)
   06-PL-201 (07/2004)    GSN-07-PL-375 (02/2006)

10. MANAGING AGENT
    Herbert H. Landy Insurance Agency, Inc.
    75 Second Avenue, Suite 410
    Needham, Massachusetts  02494-2876

*Herbert H. Landy*
Authorized Representative

Producer Code: 00026230                    Class Code: 73128
Date: 03/19/2008                           SLA#: